# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KERRY MARSHALL, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:11-cv-577 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF MERIDEN, et al, | : | NOVEMBER 28, 2017 |
| Defendants. | : | |

## RULING RE: CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 166, 175 & 183)

## I.    INTRODUCTION

The plaintiff, Kerry Marshall ("Marshall"), pro se, brings this action against the

City of Meriden and several police officers—Chief Jeffry Cossette ("Jeffry Cossette"),

Sergeant Robert Pekrul ("Pekrul"), Officer John Slezak ("Slezak"), Officer Evan

Cossette ("Evan Cossette"), and former officer Tom Zakrzewski ("Zakrzewski")—in their

individual capacities.  In his operative Second Amended Complaint (Doc. No. 77),

Marshall alleges violations of his rights under the United States Constitution and the

Connecticut Constitution in connection with an arrest that took place on November 5,

2010, pursuant to title 42, section 1983 of the United States Code, title 42, section 1985

of the United States Code, and article first, sections seven and nine of the Connecticut

Constitution.[1]

Three Motions for Summary Judgment are currently pending before the court: (1)

a Motion for Summary Judgment filed by defendants City of Meriden, Jeffry Cossette,

---

[1] In the Jurisdiction and Venue section of his Second Amended Complaint, Marshall also cites title 42, section 2000d of the United States Code.  Second Amended Complaint at 2.  That provision prohibits race discrimination in federally assisted benefits programs.  Because Marshall does not plead facts related to race discrimination or benefits programs, the court assumes that Marshall cited to this provision in error.

1

Pekrul, Slezak, and Zakrzewski (Doc. No. 166); (2) a Motion for Summary Judgment filed by defendant Evan Cossette (Doc. No. 175); and (3) a Cross-Motion for Summary Judgment filed by Marshall (Doc. No. 183).[2]

For the reasons that follow, the Motion for Summary Judgment filed by defendants City of Meriden, Jeffrey Cossette, Pekrul, Slezak, and Zakrzewski (Doc. No. 166) is granted as to Counts One, Two, Five, Six, and Seven, and denied as to Counts Three and Four; the Motion for Summary Judgment filed by defendant Evan Cossette (Doc. No. 175) is granted; and the Cross-Motion for Summary Judgment filed by Marshall (Doc. No. 183) is denied.

## II.    RELEVANT PROCEDURAL BACKGROUND

This case arises from an arrest of Marshall by Meriden police officers on November 5, 2010.  Marshall initiated this action by filing an initial Complaint (Doc. No. 1) on April 12, 2011.  Marshall subsequently moved to stay the case pending the outcome of the criminal charges underlying the November 5, 2010 arrest.  In lieu of a stay, this court issued an Order administratively closing this case pending the outcome of the criminal matter on August 25, 2011.  (Doc. No. 31).  On September 14, 2015, Marshall filed a Motion to Reopen the case (Doc. No. 38), which the court granted on November 4, 2015 (Doc. No. 45).  Thereafter, on April 22, 2016, Marshall filed the operative Second Amended Complaint ("2d Am. Compl.") (Doc. No. 77).

---

[2] In an effort to minimize confusion in this Ruling (given that there are multiple Cossette defendants, who filed different Motions for Summary Judgment), the court will refer to the Motion for Summary Judgment and supporting documents filed by the City of Meriden, Jeffry Cossette, Pekrul, Slezak, and Zakrzewski (Doc. No. 166) as "Motion for Summary Judgment A," "Memorandum A," etc., and will refer to the Motion for Summary Judgment filed by Evan Cossette (Doc. No. 175) as "Motion for Summary Judgment B."  The court will refer to Marshall's Motion for Summary Judgment (Doc. No. 183) as "Cross-Motion for Summary Judgment."

On January 20, 2017, Marshall moved for the undersigned to recuse herself.
Motion to Transfer / Disqualify / Recuse (Doc. No. 153).  This court denied Marshall's
Motion to Recuse on March 9, 2017 (Doc. No. 170), and on June 8, 2017, the Second
Circuit dismissed Marshall's appeal of that Ruling for lack of jurisdiction, given that a
final order had not been issued by this court in this case (Doc. No. 193).

In the meantime, the defendants filed their Motions for Summary Judgment in
March 2017 (Doc. Nos. 166 & 175), and Marshall filed a Cross-Motion for Summary
Judgment / Objection to the Motions for Summary Judgment filed by the defendants
(Doc. No. 183) on April 14, 2017.[3]

## III.   FACTS[4]

It is undisputed that shortly after 5:00 pm on November 5, 2010, Kerry Marshall
pulled into the parking lot of a Cumberland Farms gas station on Broad Street in
Meriden, Connecticut, and backed into a parking space.  See Plaintiff's Local Rule
56(a)(1) Statement of Material Facts ("Pl.'s Statement of Facts) (Doc. No. 183-2) at ¶ 1.
It is further undisputed that Officers Evan Cossette and Pekrul observed Marshall's car
parked at the Cumberland Farms gas station.  Defendant's Local Rule 56(a)(1)

---

[3] As defendant Evan Cossette points out in his Response to Marshall's Cross-Motion, at the time
that Marshall filed this joint Motion / Objection, the court had already ordered him not to do so.  See Order
(Doc. No. 182) ("[P]laintiff should not consolidate his opposition to the summary judgment motions with
his own Motion for Summary Judgment.").

[4] The court notes that there are two pending Motions for Summary Judgment filed by defendants
in this case, with separate Memoranda, Local Rule 56 Statements of Fact, and Responses to Marshall's
Cross-Motion for Summary Judgment.  Where the submissions of the defendants differ, the court has
noted that distinction or specifically referred to the defendant(s) taking a given position.  However, the
defendants generally take the same position, and defendant Evan Cossette—who filed his submissions
subsequent to defendants City of Meriden, Jeffry Cossette, Pekrul, Slezak, and Zakrzewski—generally
incorporates the facts alleged and arguments and analysis put forth by his co-defendants.  See, e.g.,
Def.'s Mem. B (Doc. No. 175-1) at 1 (incorporating co-defendants' recitation of the procedural history); id.
at 4 (incorporating co-defendants' argument and analysis with respect to the false arrest claim); id. at 10
(incorporating co-defendants' analysis

Statement of Material Facts A ("Def.'s Statement of Facts A") (Doc. No. 169) at ¶ 7.

Marshall alleges that the officers were following him based on a tracking device

attached to his car, Affidavit of Kerry Marshall ("Marshall Aff.") (Doc. No. 183-3) at ¶ 7,

while the defendants allege that they were surveilling the Cumberland Farms gas

station when Marshall drove in, Affidavit of Robert Pekrul ("Pekrul Aff.") (Doc. No. 192-

13) at ¶ 5.

The defendants allege that the Cumberland Farms gas station was, at the time, a

popular location for drug-dealing. Id. at ¶ 6. They further allege that drug buyers

commonly "back into a parking space so that they have an unobstructed view of the

parking lot." Id. at ¶ 8. Marshall disputes both of these assertions. See, e.g., Plaintiff's

Memorandum ("Pl.'s Mem.") at 15.

The defendants allege that Evan Cossette and Pekrul called a dispatcher and

requested that the dispatcher run Marshall's license plate number through the

Connecticut On-Line Law Enforcement Communications ("COLLECT") system, a

database of registration and insurance information. Def.'s Statement of Facts A at

¶¶ 10–12. The defendants allege that the search of the COLLECT system returned no

results for Marshall's license plate number, thereby indicating to them that Marshall's

car was neither registered with the State of Connecticut nor insured. See, e.g., id. at

13–14. Marshall alleges that his car was properly registered and insured on November

5, 2010, and that the defendants' statements that they called police dispatch and found

information that he was not registered or insured is false. See Deposition of Kerry

Marshall ("Marshall Dep.") (Doc. No. 166-3) at 46 (asserting his car was registered on

November 5, 2010); Plaintiff's Supplemental Response to Interrogatories (Doc. No. 192-

10) at 2–4 (asserting that his car was insured by Progressive Insurance by policy number 13837109-0 and registered in the State of Connecticut on November 5, 2010); Pl.'s Mem. (Doc. No. 183-1) at 21–22 (arguing that the defendants did not run a query with his license plate number on November 5, 2010).

At approximately 5:15 pm, Evan Cossette and Pekrul approached Marshall's car. See Pl.'s Statement of Facts at ¶¶ 5–6.  Although there is some dispute as to whether either of the officers identified themselves as police officers, compare Pl.'s Statement of Facts at ¶ 6 with Defendant Evan Cossette's Local Rule 56(a)(1) Statement of Material Facts ("Def.'s Statement of Facts B") (Doc. No. 175-2) at ¶ 15, the parties agree that Marshall was asked to roll down his window and refused, that he was asked to open his door and he complied, and that he ultimately exited his car.  Pl.'s Statement of Facts at ¶¶ 6, 8; Def.'s Statement of Facts B at ¶¶ 16–17.  Marshall alleges that the officers refused to permit him to find his license and registration, Pl.'s Statement of Facts at ¶ 9, while the defendants allege that Marshall refused to do so, Def.'s Statement of Facts B at ¶ 20.  The defendants state that Marshall was argumentative and tried to move away from the officers while they were attempting to arrest him.  See Def.'s Statement of Facts B at ¶ 22.  The defendants further assert that Marshall was so loud that he drew the attention of passersby and customers inside the Cumberland Farms gas station.  Id. at ¶ 22.  Marshall was eventually handcuffed and transported to the Meriden Police Station.  Pl.'s Statement of Facts at ¶¶ 11–12; Def.'s Statement of Facts B at ¶ 23.

Marshall was held at the Meriden Police Station for approximately forty-five minutes, where he was booked and searched by Zakrzewski.  See Def.'s Statement of Facts A at ¶ 71; Pl.'s Statement of Facts at ¶¶ 12–25.  His car was towed.  Def.'s

5

Statement of Facts A at ¶ 53.  Although he eventually retrieved his car, his license plates had been removed and were not returned to him.  Id.

Marshall was charged with three violations and two misdemeanors: (1) motor vehicle misuse pursuant to Connecticut General Statutes section 14-147(c); (2) operating an unregistered motor vehicle pursuant to Connecticut General Statutes section 14-12(a); (3) failure to maintain minimum insurance pursuant to Connecticut General Statutes section 14-213b; (4) breach of peace pursuant to Connecticut General Statutes section 53a-181; and (5) interfering with an officer pursuant to Connecticut General Statutes section 53a-167a.  See Defense Exhibit O (Doc. No. 166-19).

Marshall filed a civilian complaint with the Meriden Police Department related to his November 5, 2010 arrest on November 10, 2010.  See Exh. to 2d Am. Compl. (Doc. No. 77) at 34–36.  On December 9, 2010, Meriden Police Sergeant Leonard Caponigro informed Marshall that, upon review of his allegations, the Meriden Police Department was dismissing his complaint as "Not Sustained."  See id. at 39.

At the time of the November 5, 2010 arrest, Marshall was litigating a lawsuit against the Town of Middlefield and then-Middlefield Constable Scott Halligan for events arising from a brief detention of Marshall in his driveway by Halligan.  See generally Case No. 3:17-CV-1009.

## IV.   STANDARD OF LAW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, in order to defeat the motion, the nonmoving

party "must set forth specific facts showing that there is a genuine issue for trial,"
Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror
to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.
2000).  "An issue of fact is genuine and material if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."  Cross Commerce
Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

       In assessing the record to determine whether there are disputed issues of
material fact, the trial court must "resolve all ambiguities and draw all inferences in favor
of the party against whom summary judgment is sought."  LaFond v. Gen. Physics
Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder
of fact 'could find in favor of the nonmoving party because the evidence to support its
case is so slight,' summary judgment should be granted."  F.D.I.C. v. Great Am. Ins.
Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs.,
Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).  On the other hand, where "reasonable
minds could differ as to the import of the evidence," the question must be left to the
finder of fact.  Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015)
(quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## V.    DISCUSSION

       In his Second Amended Complaint, Marshall brings seven claims: (1) a false
arrest claim pursuant to the Fourth Amendment and article first, sections seven and
nine of the Connecticut Constitution against Evan Cossette and Pekrul; (2) an unlawful
seizure claim pursuant to the Fourth Amendment against Evan Cossette and Pekrul; (3)
an excessive force claim against Zakrzewski; (4) a failure to intervene claim against
Slezak; (5) a spoliation of evidence claim against Zakrzewski and Slezak; (6) a

7

retaliation claim against Evan Cossette, Pekrul, Zakrewski, and Slezak; and (7) a <u>Monell</u> claim against Jeffry Cossette.  <u>See generally</u> 2d Am. Compl.

The defendants have moved for summary judgment on all claims.  <u>See</u> Mot. for Summary Judgment A (Doc. No. 166); Mot. for Summary Judgment B (Doc. No. 175). Marshall has cross-moved for summary judgment.[5]  <u>See</u> Cross-Motion for Summary Judgment (Doc. No. 183).  The court addresses each of the claims in turn.

A.    <u>False Arrest (Count One)</u>

In his Second Amended Complaint, Marshall alleges that Evan Cossette and Pekrul falsely arrested him in violation of the Fourth Amendment as well as article first, sections seven and nine of the Connecticut Constitution.  <u>See</u> 2d Am. Compl. at 8–10. The defendants argue that Evan Cossette and Pekrul had probable cause to arrest Marshall, and therefore did not violate Marshall's constitutional rights.

1.    False Arrest Pursuant to the Fourth Amendment

The existence of probable cause to arrest is a complete defense to a false arrest claim pursuant to the Fourth Amendment.  <u>See</u> <u>Kent v. Katz</u>, 312 F.3d 568, 573 (2d Cir. 2002); <u>Colon v. Ludemann</u>, 283 F. Supp. 2d 747, 755 (D. Conn. 2003).  In analyzing Fourth Amendment false arrest claims, federal courts typically look to the law of the state in which the arrest occurred.  <u>See</u> <u>Davis v. Rodriguez</u>, 364 F.3d 424, 433 (2d Cir. 2004).  Under Connecticut law, the plaintiff bears the burden of proof as to the existence

---

[5] Marshall does not specify the claims for which he moves for summary judgment in his Cross-Motion, and because he did not file a separate objection to the defendants' Motions for Summary Judgment his intentions are particularly ambiguous.  Count Five, the spoliation claim, is not mentioned in Marshall's Cross-Motion, and the court concludes that the claim is moot, as stated in Section V(E), <u>infra</u>. As to Counts One, Two, Six, and Seven, the court concludes that the defendants are entitled to summary judgment and it is therefore immaterial whether Marshall intended to request summary judgment on those claims.  Finally, the Cross-Motion is clear that Marshall is moving for summary judgment as to claims Three and Four, and the court addresses his Motion on the merits as to those claims.

of probable cause.  See id. (citing Beinhorn v. Saraceno, 23 Conn. App. 487, 491

(1990)); Zalaski v. City of Hartford, 704 F. Supp. 2d 159, 169 (D. Conn. 2010).

As noted in the Facts section, Marshall was charged with three violations and two

misdemeanors, including operating an unregistered vehicle in violation of Connecticut

General Statutes section 14-12(a),[6] and failure to maintain minimum insurance in

violation of Connecticut General Statutes section 14-213b.[7]  If officers have probable

cause to arrest on any of the offenses charged, that is sufficient to defeat a false

imprisonment claim.  See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an

officer has probable cause to believe that an individual has committed even a very

minor criminal offense in his presence, he may, without violating the Fourth

Amendment, arrest the offender."); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006)

(holding that if officers have probable cause for one of the charges that is sufficient to

defeat a false arrest claim); see also Devenpeck v. Alford, 543 U.S. 146, 153 (2004)

("[An officer's] subjective reason for making [an] arrest need not be the criminal offense

as to which the known facts provide probable cause.").

The defendants assert that they had probable cause to arrest Marshall based on

the COLLECT inquiry they requested from dispatch before they approached Marshall's

---

[6] Connecticut General Statutes section 14-12(a) provides, in relevant part, "No motor vehicle shall be operated . . . unless it is registered with the commissioner . . . .  Except as otherwise provided in this subsection, (1) a person commits an infraction if such person (A) registers a motor vehicle he or she does not own, or (B) operates, allows the operation of, parks or allows the parking of an unregistered motor vehicle on any highway . . . ."

[7] Connecticut General Statutes section 14-213b provides, in relevant part, that "No owner of any private passenger motor vehicle . . . registered or required to be registered in this state may operate or permit the operation of such vehicle without the security required by section 38a-371."  Connecticut General Statutes section 38a-371, in turn, requires operators to maintain automobile liability insurance.

car, which indicated that Marshall's vehicle was neither registered nor insured.[8]

Marshall vigorously contests both that he was not registered or insured on November 5, 2010, and that the officers ran a COLLECT search before approaching his car.  See Marshall Dep. (Doc. No. 166-3) at 46 (asserting his car was registered on November 5, 2010); Plaintiff's Supplemental Response to Interrogatories (Doc. No. 192-10) at 2–4 (asserting that his car was insured by Progressive Insurance by policy number 13837109-0 and registered in the State of Connecticut on November 5, 2010); Pl.'s Mem. (Doc. No. 183-1) at 21–22 (arguing that the defendants did not run a query with his license plate number on November 5, 2010).  However, Marshall has failed to provide any evidence to support his assertions that he was registered and insured and that the arresting officers did not run a COLLECT search before approaching his car.

In contrast to Marshall's unsupported position that the defendants did not run a COLLECT query on November 5, 2010, and that his car was properly registered and insured, the defendants have provided a veritable mountain of evidence to show that a dispatcher did query Marshall's license plate number at 5:10 pm on November 5, 2010, that the query indicated that Marshall was not registered or insured, and that Marshall's vehicle was neither registered nor insured on the date in question.  See, e.g., Pekrul Aff.

---

[8] The defendants also argue that the COLLECT query gave them probable cause to believe that Marshall was in violation of Connecticut General Statutes section 14-147(c), which states: "No person shall use any motor vehicle registration or operator's license other than the one issued to him by the commissioner, expect as provided in section 14-18; and no person shall use a motor vehicle registration on any motor vehicle other than that for which such registration has been issued."  See Def.'s Mem. A (Doc. No. 166-1) at 5; Def.'s Mem. B (Doc. No. 175-1) at 4 (incorporating the analysis in Defendant's Memorandum B); Def.'s Response B (Doc. No. 190) at 5.  Based on the language of this statute and the facts and evidence presented by both the defendants and Marshall, the court concludes that there is no genuine dispute of material fact as to whether the officers had probable cause to believe that Marshall was in violation of this provision.  This conclusion by the court is immaterial to Marshall's false arrest claim, however, because the case law is clear that the officers need only have probable cause to arrest for one offense, Jaegly, 439 F.3d at 154, which offense need not be the offense stated as the basis for the arrest at the time of arrest, Devenpeck, 543 U.S. at 153.

(Doc. No. 192-13) at ¶¶ 10–14 (averring that Pekrul and Evan Cossette requested a COLLECT query of Marshall's license plate number and determined that he was neither registered nor insured); DMV Records (Doc. No. 192-8) at 3 (registration form showing that Marshall's registration expired on January 3, 2008); Deposition of Kimberly Lecco (Doc. No. 192-7) (DMV employee authenticating DMV records); Affidavit of Janeen Hoggett (Doc. No. 192-11) (Progressive Insurance employee swearing that Marshall's policy number 14837109-0 was canceled due to non-payment on November 11, 2006, and was not active on November 5, 2010); Progressive Insurance Records (Doc. No. 192-12) (reflecting that Marshall's policy was cancelled on November 11, 2006, for nonpayment); Affidavit of Megan Sparks (Doc. No. 192-15) (police dispatcher attesting that she ran the COLLECT search on Marshall license plate number at 5:10 pm on November 5, 2010); Deposition of Darryl Hayes (Doc. No. 192-16) at 19–20 (authenticating a COLLECT query issued at 5:10 pm on November 5, 2010, showing that Marshall's vehicle was not insured or registered on that date).

"[I]f the [moving party] has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden." Crawford-El v. Britton, 523 U.S. 574, 600 (1998); see McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999) ("[G]eneral attacks upon the defendant's credibility are not sufficient to defeat a properly supported summary judgment motion."). Because Marshall has failed to provide any evidence to support his position, he has failed to satisfy his burden with respect to the issue of probable cause, which is fatal to his claim

of false arrest. In light of this conclusion, the court need not reach the defendants'
additional arguments.   Because there is no material issue of fact in dispute, the
defendants' Motions for Summary Judgment are granted and Marshall's Cross-Motion
for Summary Judgment is denied with respect to the false arrest claim.

2.    Connecticut Constitutional Claims

In addition to his false arrest claim pursuant to the Fourth Amendment, Marshall
invokes his rights pursuant to article first, sections seven and nine of the Connecticut
Constitution.  The Connecticut Supreme Court recognized that these provisions of the
Connecticut Constitution provide a cause of action in Binette v. Sabo, 244 Conn. 23
(1998).  The Binette plaintiffs, a married couple, alleged that the police unlawfully
entered their home, pushed Ms. Binette into a wall and a table, repeatedly slammed Mr.
Binette's head against a car, struck Mr. Binette in the head, and kicked him while he
was on the ground experiencing an epileptic seizure.  Id. at 26.  In recognizing a tort
action for money damages pursuant to the state Constitution, the Connecticut Supreme
Court emphasized that this holding was based on "the egregious misconduct alleged to
have occurred" in that case.  Id. at 50 n.23.

Drawing all reasonable inferences in favor of Marshall, the court concludes that
no reasonable jury could find for Marshall on this claim.  Marshall has alleged that one
of the arresting officers taunted him while he was being arrested, Marshall Aff. (Doc. No.
183-3) at ¶ 7, that the officers refused to allow Marshall to comply with their request for
his license and registration, id. at ¶ 5, and "ransacked" his car for weapons, id. at ¶ 7.
He also alleges that one or both of the arresting officers leaned on him while detaining
him, grabbed his shirt, spun him around to put handcuffs on him, and put on handcuffs

unnecessarily tightly so that Marshall was "experience severe pain."  2d Am. Compl. at ¶¶ 23–24.  However, Marshall does not allege that he was injured, physically or emotionally, by any of this conduct, except that he sustained quarter-inch sized bruises on the sides of his wrists that went away without medical treatment within two to three weeks of the arrest.[9]  See Marshall Dep. (Doc. No. 166-3) at 150–55.

The court has concluded that Evan Cossette and Pekrul had probable cause to arrest Marshall, and "some degree of force is necessary when effectuating an arrest." Frederique v. Cnty of Nassau, 168 F. Supp. 3d 455, 472 (E.D.N.Y. 2016) (quoting Sash v. United States, 674 F. Supp. 2d 531, 538 (S.D.N.Y. 2009)).  Given that the alleged conduct took place during an arrest, the court concludes that Marshall has not alleged––much less provided evidence to support—sufficiently egregious behavior on the part of Evan Cossette or Pekrul to state a claim pursuant to article first, sections seven and nine of the Connecticut Constitution, and the defendants are entitled to summary judgment on this claim.

### 3.    Additional Issues Related to Claim One

Before proceeding to Marshall's additional claims, the court is compelled to address two additional issues, which are argued at length by Marshall in his Cross-Motion for Summary Judgment, and are related to—but not material to the outcome of––the false arrest claim.

First, in his Memorandum, Marshall attacks several of the factual assertions of

---

[9] The court notes that Marshall has also alleged that, in the holding cell, Zakrzewski applied handcuffs that were too tight.  See Pl.'s Statement of Facts at ¶ 17.  It is not clear whether Marshall is alleging that the bruises on his wrists were caused by the handcuffs applied by Evan Cossette, or Zakrzewski, or both.

the defendants at length, including their assertion that the Cumberland Farms gas station was a site of drug-dealing activity and that Marshall's backing into a parking space is suspicious behavior.  See Pl.'s Mem. at 8–24.  Had the defendants relied on these allegations as the basis for probable cause, Marshall's arguments on this point would be well received by the court.  However, the defendants do not allege that the Cumberland Farms location and backing into a parking space constitute probable cause, but merely that those circumstances led the officers to request a COLLECT query of Marshall's license plate number from dispatch.  Def.'s Response A (Doc. No. 191) at 7–8.[10]  As the court concluded above, Marshall has failed to create a genuine issue of material fact as to whether the officers knew that Marshall's vehicle was not registered or insured before they arrested him.  The officers therefore had a basis for probable cause separate from the allegations with respect to the Cumberland Farms location or Marshall's behavior that night.

Second, the court notes that there is confusion, to put it mildly, surrounding an incident report completed by Slezak for Marshall's arrest on November 5, 2010.[11]  As Marshall accurately notes, Slezak authored an incident report that places himself at the

---

[10] The court notes that the officers did not need probable cause to query the license plate.  See New York v. Class, 475 U.S. 106, 114 (1986) (no reasonable expectation of privacy in the exterior of a car); U.S. v. Ellison, 462 F.3d 557, 563 (6th Cir. 2006) (no reasonable expectation of privacy in a license plate affixed to the exterior of a car); Olabisiomotosho v. City of Houston, 185 F.3d 521, 529 (5th Cir. 1999) (no reasonable expectation of privacy in license plate number).

[11] To further complicate this issue, the first draft of the incident report, prepared on November 5, 2010, at 5:29 pm (but neither signed nor dated) reflects that the reporting officer was "Cossette, E."  See Mot. for Summary Judgment B, Exh. A (Doc. No. 175-3) at 7.  However, Evan Cossette avers that he did not complete an incident report for Marshall's arrest.  See Affidavit of Evan Cossette (Doc. No. 175-3) at 2.  A report with substantially the same allegations, dated November 8, 2010, and signed by the reporting officer and supervisor, reflects that "Off. John Slezak" is the reporting officer.  See id. at 6.  In support of Evan Cossette's averment that he was not the author of the incident report, both the November 5 draft and the final version of November 8 refer to "Officer Cossette" in the third person.

scene of the arrest along with Evan Cossette and Pekrul, and reflects that he was actively involved in the arrest.  <u>See</u> Incident Report (Doc. No. 77) at 27.  For example, the report states, "Det. Sgt Pekrul, Ofc Cossette and I approached the vehicle;" "Fearing Kerry would drive off putting the safety of the patrons of Cumberland Farms at risk of injury along with Det. Sgt Pekrul and I, I opened the door and told Kerry to turn his car off;" and "Ofc. Cossette and I conducted a frisk of the interior of the vehicle for weapons but none were revealed."  <u>Id.</u>  Yet there is no other evidence in the record to support that Slezak was present and substantial evidence—including that provided by the defendants—showing that only Evan Cossette and Pekrul were at the scene of the arrest.  <u>See generally, e.g.</u>, Pekrul Aff. (Doc. No. 166-13) (describing surveillance and arrest conducted by Pekrul and Evan Cossette and not mentioning Slezak or a third officer); Affidavit of John Slezak ("Slezak Aff.") (Doc. No. 166-17) (making no reference to be present at Marshall's arrest or authoring an incident report); Affidavit of Evan Cossette ("Evan Cossette Aff.") (Doc. No. 175-3) (stating that he, Evan Cossette, was present at Marshall's arrest); Def.'s Statement of Facts A at ¶ 7 ("While the plaintiff was parked in the Cumberland Farms parking lot on November 5, 2010, Officer Evan Cossette and Sergeant Robert Pekrul of the Meriden Police Department were conducting surveillance in an undercover capacity at the same location . . . ."); <u>but see</u> Def.'s Statement of Facts B (Doc. No. 175-2) at ¶ 5 (asserting that Evan Cossette, Pekrul, and Slezak were all conducting undercover surveillance at the Cumberland Farms parking lot on November 5, 2010, and citing Slezak's report as evidence).

After pointing out this discrepancy, Marshall argues that Slezak is guilty of False

Reporting, Connecticut General Statutes section 53a-180, a Class D Felony.[12]  See Pl.'s Mem. at 11.  It is unclear whether, in raising this issue, Marshall is attempting to cast doubt on the defendants' arguments and evidence, support his own arguments as to the false arrest claim, or bring a new claim against Slezak.  See generally id. at 7–17.

The defendants make no attempt to explain or justify the troubling discrepancy between the incident report and the evidence suggesting that Slezak was not there. Instead, in Response A, defendants City of Meriden, Jeffry Cossette, Pekrul, Slezak, and Zakrzewski argue that Marshall did not properly raise a claim related to Slezak's incident report in his Second Amended Complaint, Defendants' Response A at 3, that he cannot raise a new claim now, id. at 4, that he cannot raise a claim under Connecticut General Statutes section 53a-180 because it is a criminal statute that creates no private right of action, id. at 4–5, and that, even if a private right of action existed, the statute does not apply to the facts alleged here, id. at 5.  These defendants also argue that, because the incident report is hearsay, it is not admissible evidence that Marshall can use to support his claims.  Id. at 3.

To the extent that Marshall is attempting to bring a new claim against Slezak related to the incident report, the court agrees with the defendants that such a claim is untimely, that section 53a-180 does not create a private right of action, and that section

---

[12] Connecticut General Statutes section 53a-180 provides, in pertinent part:  "A person is guilty of false reporting an incident in the first degree when, knowing the information reported, conveyed or circulated to be false or baseless, such person: (1) initiates or circulates a false report or warning of an alleged occurrence or impending occurrence of a fire, explosion, catastrophe or emergency under circumstances in which it is likely that public alarm or inconvenience will result."

53a-180 does not prohibit Slezak's conduct.[13]  The court further notes that the discrepancy—while deeply troubling—does not alter the court's conclusion with respect to the false arrest claim against Evan Cossette and Pekrul, which conclusion is based on the existence of probable cause resulting from the COLLECT query.

As to the hearsay argument, the court notes that the report, which is authored by a defendant, is not hearsay because it is the statement of an opposing party.  See Federal Rule of Evidence 801(d)(2).  Furthermore, even if the author of the report were not a defendant, it would still be admissible if used to prove something other than the truth of the matter asserted, such as impeachment of a witness.  Id. at 801(c)(2).

In Response B, defendant Evan Cossette asserts that the evidence demonstrates that Slezak was present, although Evan Cossette is notably silent on the matter in his sworn Affidavit.  See Evan Cossette Aff.; Def.'s Response B (Doc. No. 190) at 4–5.  Defendant Evan Cossette also argues that the issue is immaterial in any event.  Def.'s Response B at 5.  Although the court is highly skeptical of the first argument, the court agrees that the issue is immaterial to the resolution of the pending Motions for Summary Judgment.

B.    Unlawful Seizure (Count Two)

In his Second Amended Complaint, Marshall brings an unlawful seizure claim against Evan Cossette and Pekrul on the ground that those officers unlawfully seized his license plate.  2d Am. Compl. at 10–11.  The court need not reach the question of whether a license plate can lawfully be seized as evidence of registration and insurance

---

[13] In arguing that section 53a-180 does apply, Marshall selectively quotes the provision, leaving out the language which cabins that section to reports of "a fire, explosion, catastrophe or emergency."  See Pl.'s Mem. at 12.

violations, because Marshall has failed to allege—must less support with evidence—

that either Evan Cossette or Pekrul were personally involved with the seizure of his

license plate.  "[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an aware of damages under § 1983."  Williams v. Smith,

781 F.2d 319, 323 (2d Cir. 1986) (quoting McKinnon v. Patterson, 568 F.2d 930, 934

(2d Cir. 1977).  The court therefore grants summary judgment for the defendants and

denies summary judgment for Marshall on the unlawful seizure claim.

    C.    <u>Excessive Force (Count Three)</u>

In his Second Amended Complaint, Marshall alleges that Zakrzewski used

"unreasonable and excessive police force" against Marshall while he was detained at

the Meriden Police Station.  2d Am. Compl. at ¶ 47.  Specifically, Marshall alleges that

Zakrzewski put handcuffs on Marshall "in an extremely tight fashion" and then "violently

raised [Marshall]'s arms" several times, causing Marshall to "experience extreme pain."

Id. at ¶¶ 47(g), (h).  Marshall supports this assertion with an Affidavit attached to his

Cross-Motion for Summary Judgment (Doc. No. 183-3), and by reference to video

footage of Zakrzewski's search of his person on November 5, 2010.  See Video Exh.

(Doc. No. 168).

The defendants[14] argue that "the undisputed evidence demonstrates that all force

used was reasonable."  Def.'s Mem. A at 14.  They further argue that Marshall suffered

only de minimus injuries, and therefore cannot support his excessive force claim.  Id. at

16–17.  Finally, defendants assert that, even if Zakrzewski did use excessive force, he

---

[14] Because Marshall brings the excessive force claim only against Zakrzewski, defendant Evan Cossette did not address this claim in his filings.  Therefore, for the purposes of this claim, "defendants" refers to the City of Meriden, Jeffry Cossette, Pekrul, Slezak, and Zakrzewski.

is entitled to qualified immunity because "it was not clearly established that any force used was excessive and a reasonable officer could have believed that Mr. Zakrzewski's conduct was necessary to safely complete a pat down search." Id. at 19.

As a threshold matter, the court notes that Marshall has not specified under which Amendment of the Constitution his rights were violated. Claims of excessive force are cognizable under the Fourth, Eighth, and Fourteenth Amendments. See Graham v. Connor, 490 U.S. 386, 394–95 (1989). The standards for proving excessive force under each of these three Amendments differ materially. See id. at 398; Dancy v. McGinley, 843 F.3d 93, 117–18 (2d Cir. 2016). The protections of the Eighth Amendment extend only to individuals who are being punished, and therefore apply only to claims arising post-conviction. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Whether to analyze Marshall's claims pursuant to the Fourth or Fourteenth Amendment, however, presents a more difficult question.[15] The Fourth Amendment applies to conduct that occurs during an arrest, Graham, 490 U.S. at 395, while conduct that occurs during pretrial detention should be analyzed as Procedural Due Process claims pursuant to the Fourteenth Amendment, see id. at 395 n.10; Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015).

Marshall alleges excessive force that occurred while he was being searched in a holding cell at the Meriden Police Station, which falls into what courts have termed the "post-arrest, pre-arraignment" period. Pierce v. Multnomah Cnty, Or., 76 F.3d 1032, 1043 (9th Cir. 1996) (concluding that the Fourth Amendment governs the conditions of

---

[15] The defendants analyze Marshall's claim pursuant to the Fourth Amendment. See Def.'s Mem. A at 14.

custody during this period).  The Supreme Court has expressly reserved the question of whether the Fourth or Fourteenth Amendment governs conduct occurring during this "gap" between arrest and arraignment, Graham, 490 U.S. at 395 n.10, and the Second Circuit has not resolved the question, see Perez v. City of New York, No. 07 Civ. 10319(RJS)(KNF), 2009 WL 1616374, at *7 (S.D.N.Y. June 8, 2009).  However, the Second Circuit has opined that "the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989).  Lower courts in this Circuit have consistently applied the Fourth Amendment standard for excessive force to conduct in the "gap" period.  See, e.g., Perez, 2009 WL 1616374, at *7; Thompson v. City of Meriden, No. 3:94-CV-1950 (EBB), 1999 WL 301693, at **5–6 (D. Conn. Apr. 14, 1999); Blake v. Base, No. 90-CV-0008, 1998 WL 642621, at *11 (N.D.N.Y. Sept. 14, 1998).  This court therefore follows suit and analyzes Marshall's claims pursuant to the Fourth Amendment's bar on use of excessive force.

A claim of excessive force under the Fourth Amendment is analyzed under an "objective reasonableness" standard.  See Graham, 490 U.S. at 395; Dancy, 843 F.3d at 116.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396.  Factors that courts should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight."  Id.

In the Affidavit Marshall submitted in support of his Cross-Motion for Summary Judgment, Marshall avers that Zakrzewski "feigned [Marshall]'s non-compliance" with Zakrzewski's orders in order to "exact torture" on Marshall through the use of "improper and extremely tight [hand]cuffs" and by "violent[ly] thrust[ing] [Marshall]'s handcuffs upward" in order to cause pain.  Marshall Aff. at ¶¶ 11–12.  Marshall asserts that he was subjected to this treatment for approximately four and a half minutes.

The defendants agree that Zakrzewski put handcuffs on Marshall, but assert that it was reasonable to do so because Marshall ignored Zakrzewski's instructions, that Zakrzewski did not put on handcuffs in an "excessively tight" manner, and that Zakrzewski did not "bend or raise the plaintiff's arms in any unnecessary or excessively painful manner, or otherwise use any unnecessary force on the plaintiff."  Def.'s Mem. A at 16.  In short, the defendants do not argue that Marshall's assertions fail as a matter of law, but rather argue that the evidence submitted, including the surveillance videotape of the holding cell during the search and Zakrzewski's Affidavit, conclusively disprove Marshall's assertions.

At the summary judgment stage, disputed facts ordinarily must be viewed in the light most favorable to the nonmoving party.  However, this presumption applies only to "genuine" disputes of fact.  Scott v. Harris, 550 U.S. 372, 380 (2007).  Conflicting affidavits generally create a "genuine dispute of fact."  See Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment" (quoting Fischl v. Armitage, 128

F.3d 50, 55–56 (2d Cir. 1997))).  Even a "self-serving affidavit" is sufficient to create a

genuine issue of fact, "so long as the affidavit does not contradict the witness's prior

testimony."  Dye v. Kopiec, No. 16 Civ. 2952 (LGS), 2016 WL 7351810, at *3 (S.D.N.Y.

Dec. 16, 2016) (collecting cases).  The parties do not direct the court to any material

inconsistencies in the testimony of either Marshall or Zakrzewski, and the court is aware

of none.  The conflicting accounts given in the affidavits are therefore sufficient to create

a genuine issue of fact properly resolved by a jury.

        On the other hand, if the surveillance video blatantly contradicts one of the

accounts at issue here, the factual dispute is not "genuine."  Scott, 550 U.S. at 380.  In

such a case, the court must reject the version of events that is inconsistent with the

video, at least where there are no allegations that the videotape itself is unreliable.  See

id. at 378, 386 (entering summary judgment for defendants where videotape evidence

"quite clearly contradict[ed]" the respondent's story).

        Upon review of the video surveillance available in this case, the court concludes

that it does not "clearly contradict[ ]" either Marshall's or the defendants' version of

events.  The videotape includes thirty minutes of surveillance footage beginning at

5:44 pm.  Video Exh. (Doc. No. 168).  Marshall enters at approximately 5:46 pm,

wearing handcuffs and then paces for a minute.  Id.  Zakrzewski enters at 5:47 pm,

removes the handcuffs that Marshall is wearing and then leaves the holding cell.  Id.

Zakrzewski re-enters ten minutes later, at 5:58 pm, and immediately directs Marshall to

place his hands on the wall, which Marshall does.  Id.  Zakrzewski then begins a

patdown search of Marshall.  Id.  Within a few seconds, Marshall turns around slightly,

taking one hand off the wall, then removes the other hand.  Id.  It appears that

22

Zakrzewski then grabs one of Marshall's hands and the two appear to be conversing. Id.  At this point, another officer becomes partially visible in the doorway.  Id.  Marshall then puts both his hands on the wall.  Id. at 5:58 pm.  Several seconds later, Marshall once again removes a hand from the wall, and Zakrzewski puts Marshall in cuffs.  Id. The other officer who entered the holding cell leaves and returns while the handcuffing is occurring.  Id.  At approximately 5:59 pm, the hand of a third officer appears in the doorway, and the attention of Marshall and Zakrzewski appears to be focused on this third individual.  Id.  For a minute and a half, the video reflects that Zakrzewski is not searching Marshall, but is merely standing behind him holding his hands.  Id.  The disembodied hand of the officer who is otherwise out of the camera's view can be seen gesturing, including jabbing a finger in Marshall's direction at 6:01 pm.  Id.  Immediately thereafter, Zakrzewski resumes his search of Marshall, including removing Marshall's belt and turning out his pockets.  Id.  During this time Zakrzewski appears to generally have one hand on Marshall's cuffed hands and moves Marshall's arms during the search.  Id.  At one point, Marshall appears to be bent over at the waist nearly double, which seems to be while Zakrzewski is removing the handcuffs.  Id. at 6:02 pm.

The footage does not clearly contradict either Marshall's or the defendants' version of events.  First, the video is shot from a high angle in the holding cell, which makes it difficult to evaluate whether Zakrzewski held Marshall's arms at an unreasonable angle.  Second, the video does not include audio, so it is does not show whether Marshall was asking Zakrzewski to stop or otherwise communicating that he was in pain.  Third, the quality of the video is, like most surveillance footage, grainy and black and white.  It is therefore impossible to discern facial expressions or read lips.  A

reasonable jury could interpret this video to support Marshall's version of events, or that of Zakrzewski. Therefore, for the purposes the defendants' Motion for Summary Judgment A, the court will accept Marshall's version of events as true, and for the purposes of Marshall's Cross-Motion for Summary Judgment, the court will accept Zakrzewski's version of events as true.

### 1. Objective Reasonableness of Zakrzewski's Conduct

As noted above, determining the "objective reasonableness" of an officer's use of force includes considering factors such as "the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers or others" or is "actively resisting" the officers. Graham, 490 U.S. at 396. Here, Marshall was arrested for misdemeanor offenses and violations, none of which were violent or involved weapons. The officers have not alleged that they were concerned for their safety at any point. Zakrzewski initially removed Marshall's cuffs for the search, suggesting that he was not concerned for his safety. For the majority of the time that Zakrzewski conducted the search on Marshall, and the entirety of the period in question (while Marshall was in the handcuffs that Zakrzewski applied), at least one and sometimes two other officers were present. Finally, while the video shows that Marshall did remove his hands from the wall, the video does not show any violent or threatening behavior on Marshall's part and the officers have alleged none.

As to the government interests at stake, Marshall alleges that Zakrzewski used force maliciously, in order to cause pain. He alleges that Zakrzewski applied handcuffs extremely tightly, jerked his arms upward at an excruciating angle, and ignored his pleas to loosen the handcuffs or put his arms down. Marshall acknowledges, and the

24

video footage conclusively shows, that this behavior could have lasted only a few minutes at most.  Nevertheless, Marshall's allegations that Zakrzewski intentionally hurt him, particularly in a controlled environment with other officers present, is sufficient to withstand summary judgment.  See, e.g., Robison v. Via, 821 F.2d 913, 923–24 (2d Cir. 1987) (allegations that officer pushed plaintiff against the inside of a car door, yanked her out, threw her up against the car and twisted her arm behind her back were sufficient to withstand summary dismissal).

In their Response to Marshall's Cross-Motion for Summary Judgment, the defendants note that, pursuant to the Fourth Amendment excessive force standard, "there is no 'state of mind' element in an excessive force claim."  Response A at 22.  In support of this argument, the defendants cite the court to Graham, wherein the Supreme Court held, "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  490 U.S. at 397.  The relevance of Zakrzewski's state of mind here, however, is not as to the force used, but rather to the purpose of the force.  The court is tasked with balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Id. at 396.  Where the allegation is that the conduct in question was used not to effect an arrest or exert necessary control but gratuitously to cause pain, that suggests that it did not serve government interests.  Whether such force was actually used and, if it was, whether it served legitimate purposes or was only used to cause pain are questions of fact for the jury to determine.

2.    De Minimus Harm

The defendants argue that, even if Zakrzewski's conduct was objectively unreasonable, Marshall's excessive force claim fails because Marshall suffered no compensable injury as a result.  Courts in this District have granted summary judgment where the harm alleged is deemed to be <u>de minimus</u>.  For example, in <u>Ferraresso v. Town of Granby</u>, the court concluded that the plaintiff had not alleged a compensable injury where the plaintiff alleged that a handcuff was applied so tightly that "it cut off circulation in his left hand, that he had a red mark on his wrist for one week thereafter, and suffers the lasting injury of numbness in his left index finger" and where his left arm was twisted violently enough to tear his rotator cuff.  646 F. Supp. 2d 296, 307–08 (D. Conn. 2009).  In reaching the conclusion that Ferraresso had failed to show compensable injury, the court further noted that Ferraresso "never sought medical attention for his wrists at any time after the incident."  <u>Id.</u>  However, the <u>Ferraresso</u> court also relied on the undisputed fact that Ferraresso never informed the officers that the cuff was too tight, asked them to remove the cuff, or told them he was in pain.  <u>Id.</u> There were also no allegations in <u>Ferraresso</u> that the force used "went beyond that which is normally employed."  <u>Id.</u> at 308.

Here, Marshall's allegation—not clearly contradicted by the video footage—is that Zakrzewski intentionally used force to hurt him, that Marshall begged him to stop and told him he was in pain, and that Zakrzewski ignored him.  Marshall's only allegations of harm are that he sustained bruises on the sides of his wrists that were roughly one-quarter inch in diameter and "muscle pulls" in his upper arms, both of which resolved within a couple of weeks.  <u>See</u> Marshall Dep. at 150–55, 224.  Had these

injuries been caused by the use of force which is "normally employed," the court would agree with the defendants that Marshall had not alleged compensable harm. Nevertheless, an officer may not freely use force maliciously up until the point at which lasting injury is caused.  See Huaman on behalf of Son v. Tinsley, No. 313-cv-484 (MPS), 2017 WL 4365155, at *14 (D. Conn. Sept. 28, 2017) ("Where the circumstances call for no application of force . . . an excessive force claim can still survive where any injuries are minor.").  Given the conflicting evidence before the court, the question of excessive force is one that should go to a jury.

That the absence of significant injury does not bar Marshall's claim as a matter of law does not render the degree of injury irrelevant to the excessive force inquiry.  De minimus harm may indicate the degree of force which was used, and limit the amount of damages that Marshall can recover.  See Wilkins v. Gaddy, 559 U.S. 34, 37–40 (2010). These are matters for the fact finder to determine at trial, however, not for the court to determine at the summary judgment stage.

### 3. Qualified Immunity

If "officers of reasonable competence" could disagree as to the reasonableness of Zakrzewski's alleged use of force, then Zakrzewski is entitled to qualified immunity. Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).  The defendants allege that Zakrzewski is entitled to qualified immunity because "a reasonable officer could have believed that Mr. Zakrzewski's conduct was necessary to safely complete a pat down search."  Def.'s Mem. A at 19.  Crediting Marshall's version of events for the purposes

of the defendants' Motion for Summary Judgment,[16] the court concludes that Zakrzewski is not entitled to qualified immunity for the excessive force claim, because no reasonable officer would find it objectively reasonable to intentionally apply handcuffs extremely tightly in order to cause pain, and repeatedly jerk an arrestee's arms upward behind his back in order to hurt him, which is what the court is required to assume occurred on the record before it.

4.    Marshall's Cross-Motion for Summary Judgment

In his Cross-Motion for Summary Judgment, Marshall asserts that he is entitled to summary judgment on the excessive force claim, citing for support his own allegations in his Second Amended Complaint. See Pl.'s Mem. at 25–26. Because the defendants have submitted Zakrzewski's Affidavit refuting Marshall's version of events, and because the video footage does not clearly contradict the defendants' version of events, Marshall's Cross-Motion for Summary Judgment is denied with respect to the excessive force claim.

D.    Failure to Intervene

In his Amended Complaint, Marshall alleges that Slezak "observed from the doorway of the holding cell" while Zakrzewski alleged used excessive force, and failed to intervene on Marshall's behalf despite having ample opportunity to do so. It is well settled that law enforcement officers are obligated to intervene if they witness another law enforcement officer infringe a citizen's constitutional rights. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

---

[16] As with their previous arguments, the defendants do not argue that such behavior is arguably reasonable, but rather ignore Marshall's sworn statement as to Zakrzewski's behavior and treat Zakrzewski's version of events as true. In so doing, the defendants ignore Rule 56 of the Local Rules of Civil Procedure. For the reasons stated above, the court declines to follow suit.

The defendants[17] argue, first, that because Zakrzewski did not violate Marshall's constitutional rights, Slezak had no obligation to intervene.  Def.'s Mem. A at 21–22.  As the court has concluded that the defendants are not entitled to summary judgment on the excessive force claim, this argument fails.  See supra Section V(C).

The defendants further argue that, even assuming that Zakrzewski did violate Marshall's rights, the violation alleged "occurred quickly, which would have prevented Officer Slezak from having a realistic opportunity to intervene."  Def.'s Mem. A at 21.  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  Anderson, 17 F.3d at 557; see, e.g., Jones v. City of Hartford, 285 F. Supp. 2d 174, 182–83 (D. Conn. 2003) (no realistic opportunity to intervene where officers were on the other side of a car when "three to five kicks" were administered in "rapid succession").  Whether there was adequate time to intervene is typically a question for the jury.  Anderson, 17 F.3d at 557.

Upon review of Marshall's factual allegations and the videotape footage of the holding cell, the court concludes that genuine issues of material fact exist with respect to Slezak's opportunity to intervene.  Marshall alleges that Slezak was present while Zakrzewski applied extremely tight handcuffs and then jerked his arms upward behind his back in order to cause pain, that Marshall "squealed" in pain and begged Zakrzewski to stop, and that this went on for several minutes.  Marshall Aff. at ¶¶ 11–12.  Although the videotape is ambiguous with respect to whether Zakrzewski is indeed using excessive force, it clearly reflects that, during the period in question, Slezak was

---

[17] Because Marshall brings the failure to intervene claim only against Slezak, defendant Evan Cossette did not address this claim in his filings.  Therefore, for the purposes of this claim, "defendants" refers to the City of Meriden, Jeffry Cossette, Pekrul, Slezak, and Zakrzewski.

standing just a few feet away, in the doorway of the holding cell, with nothing obstructing his view of Zakrzewski and Marshall or preventing him from intervening.  A reasonable jury could conclude that Slezak had the opportunity to intervene.

Finally, if the jury believes the evidence as alleged by Marshall, Slezak would not be entitled to qualified immunity.  No reasonable jury would believe that it was reasonable for Zakrzewski to apply extremely tight handcuffs and then jerk Marshall's arms up behind his back repeatedly, ignoring his pleas to stop, or that Slezak would not have a responsibility to intervene if he witnessed such conduct, particularly where the officers did not fear for their safety.

On the other hand, a reasonable jury could credit Zakrzewski's version of events, and find that no excessive force was used.  A jury could also conclude that Slezak did not have an adequate opportunity to intervene.  The court therefore denies both the defendants' Motion for Summary Judgment and Marshall's Cross-Motion for Summary Judgment as to this claim.

### E.    Spoliation of Evidence

In Marshall's Second Amended Complaint, he alleges that Zakrzewski and Slezak altered or failed to preserve the videotape surveillance from Zakrzewski's search of Marshall in the holding cell.  See 2d Am. Compl. at 14–15.  As the defendants note, Marshall has been provided with that videotape, and Marshall does not allege that the videotape has been altered.  See Def.'s Mem. A at 26.  Marshall does not challenge this characterization in his Cross-Motion for Summary Judgment, and his deposition testimony supports the defendants' position.  See Marshall Dep. at 222, 230–31. Marshall's spoliation claim is therefore terminated as moot in light of the videotape evidence provided to Marshall.

30

F.    Retaliation

Marshall alleges that Evan Cossette,[18] Pekrul, Zakrzewski, and Slezak retaliated against Marshall because of the then-pending civil suit that Marshall brought against the City of Middlefield and Middlefield Constable Scott Halligan.  2d Am. Compl. at 15.

In order to prevail on a retaliation claim, a plaintiff must prove: (1) he was engaged in activity protected by the First Amendment; (2) the defendants' actions were motivated or substantially caused by said protected activity; and (3) the defendants' actions chilled the plaintiff's exercise of his First Amendment rights.  See Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

The defendants do not dispute that Marshall has satisfied the first element, as his lawsuit against Middlefield police officers is clearly an activity protected by the First Amendment.  See Def.'s Mem. A at 27; Def.'s Mem. B at 11 (incorporating by reference the analysis in Defendant's Memorandum A).  However, the defendants argue that Marshall has not created a genuine issue of material fact with respect to either their motivations or whether his speech was chilled.  See Def.'s Mem. A at 27.  In his Cross-Motion for Summary Judgment, Marshall argues that he has satisfied all three elements.  Pl.'s Mem. at 34–38.  Because the court concludes that Marshall's claim fails on the second element, the court does not reach the merits of the third element.

In order to survive summary judgment on a retaliation claim, a plaintiff "must offer specific evidence of improper motivation" on the part of the defendants.  Blue v. Koren,

_____

[18] The court notes that Marshall brings this claim against defendant "Cossette," but does not specify whether he is referring to Officer Evan Cossette or Chief Jeffry Cossette.  Based on the context of the claim, which refers to the arrest effected by Evan Cossette and not the supervisory role of Jeffry Cossette, the court construes this claim as a claim against Evan Cossette.  In any event, Marshall has failed to satisfy his burden with respect to the retaliation claim against any defendant, so the court's analysis would not change if Marshall intended to bring this claim against Jeffry Cossette.

72 F.3d 1075, 1083 (2d Cir. 1995).  To support his argument that the defendants knew about his lawsuit against the Town of Middlefield and then-Constable Scott Halligan, Marshall cites the court to two Exhibits: (1) interrogatory responses by Evan Cossette and Pekrul reflecting that those defendants knew that Middlefield Resident Trooper Thomas Topulos is related to Meriden Deputy Police Chief Timothy Topulos, and (2) an internet article about Marshall's law suit against Thomas Topulos and Scott Halligan (Doc. No. 183-22).

With respect to the interrogatory responses, Marshall did not, in fact, attach such an Exhibit to his Cross-Motion (or, for that matter, any evidence that Thomas and Timothy Topulos are related).  However, even assuming for the sake of argument that the interrogatory response exists and that Evan Cossette and Pekrul did know of the relationship between the Thomas and Timothy Topulos, that fact would not support a finding that the defendants were aware of the lawsuit, much less that their actions were retaliatory.[19]

The article that Marshall attached as "evidence" of retaliatory intent also does not create a genuine issue of material fact as to the second element: Marshall has produced no evidence suggesting that any of the defendants read that article or any other.  More importantly, even assuming that all the defendants were aware of the lawsuit and aware of the close family relationship between their Chief Deputy and one of the defendants in Marshall's civil suit, that would still be insufficient to create a genuine issue of material fact as to the officers' motivations.  No reasonable jury could

_____

[19] Indeed, given that Thomas Topulos was not a defendant in Marshall's 2010 case and Timothy Topulos is not a defendant in this case, the court is of the view that the relationship between the two (assuming it exists) is an extremely thin basis upon which to argue that retaliation was at play.

conclude, on the basis of this evidence, that the defendants' actions were retaliatory.

Although Marshall generally alleges that the officers learned about his suit through word of mouth among police officers and media coverage, he has failed to provide any evidence of improper motivation required to survive the summary judgment phase.  In fact, with respect to Pekrul and Slezak specifically, Marshall testified at his deposition that he does not "have any evidence that they were aware of the lawsuit." Marshall Dep. at 258.  Because Marshall has provided only "conjecture and speculation" that the defendants' actions were retaliatory, the defendants are entitled to judgment as a matter of law on the retaliation claim.  Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of the motion [for summary judgment]."); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party needed to show more than "some metaphysical doubt" as to material facts in order to withstand motion for summary judgment).  The court therefore grants the defendants' Motions for Summary Judgment and denies Marshall's Cross-Motion for Summary Judgment on the retaliation claim.

G.    Monell Claim

Marshall's seventh and final cause of action is a claim against Chief Jeffry Cossette,[20] which he styles "Failure to Adequately Train and Supervise."  2d Am. Compl. at 17–18.  The court, like the defendants, construes this claim as a municipal

---

[20] The court assumes that Marshall intended to bring this claim against the City of Meriden as well, since Marshall named the City of Meriden as a defendant and no other claim even arguably applies to the City of Meriden, although Marshall only referred to Jeffry Cossette in alleging his Seventh Count. See 2d Am. Compl. at 17–18.  However, because the court concludes that Marshall has failed to create genuine issues of material fact to survive summary judgment on his Monell claim as to any defendant, the court need not decide which of the defendants is the proper defendant for the Monell claim.

liability claim pursuant to the doctrine first articulated in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  Under Monell, a municipality is liable for the unconstitutional actions of one or more of its employees if the actions were the result of a "policy or custom" of the municipality.  Id. at 694.

In order to withstand a motion for summary judgment on a Monell claim, a plaintiff must come forward with evidence: simply stating a constitutional violation occurred is insufficient.  Specifically, in order to prove that a municipal defendant failed to train employees, a plaintiff must proffer "evidence as to the city's training program and the way in which that program contributed to the violation."  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 n.8 (2d Cir. 2004).  In order to prove that a municipal defendant failed to adequately supervise its employees, leading to the constitutional violation, a plaintiff must proffer evidence tending to show "that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference."  Id. at 128.

Marshall has not created genuine issues of material fact under either a failure-to-train or an inadequate-supervision theory of municipal liability.  His Second Amended Complaint simply alleges, without specific facts to support, that Jeffry Cossette "failed to adequately train and supervise" his employees despite their "history of violating the civil rights of citizens" and "promulgated a culture of noncompliance, corruption and failure to adhere to proper police procedure and professionalism."  2d Am. Compl. at 17–18.  In his Cross-Motion for Summary Judgment, Marshall does not dispute the defendants' Motion for Summary Judgment on this claim, much less provide evidence to support his

claim by creating a material issue of fact.  The court therefore grants the defendants'

Motion for Summary Judgment on the <u>Monell</u> claim and, to the extent that Marshall's

Cross-Motion requests summary judgment on this issue, his Cross-Motion is denied.

## VI.      CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment is

**GRANTED** with respect to Counts One, Two, Five, Six, and Seven, and **DENIED** with

respect to Counts Three and Four.  Defendants Evan Cossette, Jeffry Cossette, Robert

Pekrul, and the City of Meriden are hereby **DISMISSED** as defendants in this action.

Marshall's Cross-Motion for Summary Judgment is hereby **DENIED** in full.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of November, 2017.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge